IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


TODD SPRAYBERRY                                        PLAINTIFF


VS.                          CIVIL ACTION NO. 3:15-cv-205-WHB-JCG


MISSISSIPPI STATE DEPARTMENT OF EDUCATION;
DR. CAREY WRIGHT, STATE SUPERINTENDENT OF
EDUCATION, INDIVIDUALLY AND IN HER OFFICIAL
CAPACITY; PATRICK ROSS, DEPUTY STATE
SUPERINTENDENT, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY; PAULA VANDERFORD,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY;
MIKE VINSON, CONSERVATOR FOR THE SCOTT COUNTY
SCHOOL DISTRICT ACTING IN THE PLACE OF THE BOARD
OF TRUSTEES AND IN HIS INDIVIDUAL CAPACITY;
C.M. "MARK" BOYLES, CONSERVATOR FOR THE SCOTT
COUNTY SCHOOL DISTRICT ACTING IN THE PLACE OF
THE BOARD OF TRUSTEES AND IN HIS INDIVIDUAL CAPACITY;
ANNETTE VARNER, IN HER OFFICIAL CAPACITY
AND INDIVIDUALLY, AND JOHN DOES X, Y AND Z       DEFENDANTS


## OPINION AND ORDER

This cause is before the Court on several Motions that have been filed by Defendants Mike Vinson and C.M. "Mark" Boyles. Having considered the pleadings, as well as supporting and opposing authorities, the Court finds:

The Motion to Dismiss Federal Claims should be granted to the extent it seeks dismissal of Plaintiff's (1) claims under the Individuals with Disabilities Education Act; (2) claims under Title VII of the Civil Rights Act that are asserted against these

defendants in their individual capacities; (3) First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendant Mike Vinson in his official and individual capacities; and (4) First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendant C.M. Boyles in his official and individual capacities that is based on alleged retaliatory employment actions that occurred on or before June 30, 2014. The Court will not dismiss Plaintiff's Title VII claims alleged against Defendants Mike Vinson and C.M. Boyles in their official capacities, or his the First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendant C.M. Boyles in his official and individual capacities that is based on alleged retaliatory employment actions that occurred on or after June 30, 2014.

Plaintiff's state law Whistle Blower claim should be dismissed for lack of jurisdiction because there has been no showing that he exhausted his administrative remedies with respect to that claim as required by Mississippi Code Annotated Section 25-9-177. The Court will reconsider this ruling in the event Plaintiff shows that the exhaustion requirements of Mississippi Code Annotated Section 25-9-177 were satisfied or are otherwise inapplicable in this case.

The Motions seeking to strike Plaintiff's jury demand and punitive damages demand with respect to his state law Whistle Blower claim should be denied, without prejudice, as moot.

2

## I.  Factual Background and Procedural History

Todd Sprayberry ("Sprayberry"), was employed by the Scott County School District ("District") in 2012, and operated its handicapped school bus.  Beginning in August of 2013, Sprayberry made multiple complaints regarding safety and transportation of special needs students "through the entire chain of command of the District".  Compl. ¶ 60.  For example, Sprayberry complained that the handicapped school bus did not have the federally and state-required straps needed to safely transport wheelchair bound students, id. at ¶ 65, and that the District had received reports of wheelchair bound students having "turned over" in the bus.  Id. at ¶ 68.

In 2013, the District was investigated by the Mississippi Department of Education ("MDE") and the State Attorney General's Office.  Sprayberry allegedly assisted in the investigation with respect to the safety issues/violations concerning special needs children in the District.  Id. at ¶ 62.  For example, Sprayberry reported that his Supervisor, Greg Nicks ("Nicks"), the Director of Transportation for the District, told him to hide the handicapped school bus during an inspection by the MDE.  Id. at ¶ 69-70.  Sprayberry also reported that during the investigation, wheelchair bound students were being dropped off at other schools or directed to have their parents bring them to school to limit the number of students on the handicapped bus.  Id. at ¶ 72.  In February of

3

2014, following the investigation, the MDE determined that an extreme emergency situation existed in the District, and requested the declaration of a state of emergency by Mississippi Governor Phil Bryant. Id. at ¶ 43. Following the issuance of a Proclamation for a State of Emergency by Bryant, Mike Vinson ("Vinson") was named the Interim Conservator for the District on or about March 1, 2014. Id. at ¶ 50.

After the state of emergency was declared, Sprayberry continued to be supervised by Nicks. In addition to driving the handicapped school bus, Sprayberry was also paid $1,200 per month to fuel the other school buses in the fleet. Id. at ¶ 76. On or about March 1, 2014, Sprayberry was terminated from the fueling job following statements by District officials regarding "lost fuel" and inferences of gasoline being stolen. Id. at ¶ 78. On March 14, 2014, Nicks transferred Sprayberry from his position as driver of the handicapped school bus, which resulted in an approximate 56.00 per day reduction in pay. Id. at ¶ 82. Upon being transferred to drive non-handicapped buses, Sprayberry alleges that he was assigned school buses that had "operational" problems and non-functioning gauges. Id. at ¶ 84. On April 7, 2014, Nicks informed Sprayberry that he would no longer be allowed to take his assigned school bus to his home following the completion of his route. Id. at ¶ 86. According to Sprayberry, he was the only driver who was required to return his bus to the school at the end

4

of the day.

On or about April 15, 2014, Sprayberry met with Vinson and was told that he would continue to drive a regular bus for the remainder of the school year, and that he would begin driving the handicapped bus the following school year. Id. at ¶ 90. Following his meeting with Vinson, Sprayberry continued to raise various complaints regarding issues involving the safety of the school buses in the District. For example, on April 16, 2014, Sprayberry was required to wait for a bus to transport special needs students on a field trip to Jackson, Mississippi, but the bus broke down during the trip. Id. at ¶ 92. The replacement bus allegedly developed a flat tire after it was driven only a few miles. Id. at ¶ 92. On May 6, 2014, Sprayberry's bus ran out of gas because it had a non-functional gas gauge and speedometer. Id. at ¶¶ 98-100. Thereafter, Spray berry was told he would have to take his bus for regular fueling and fluid checks following the completion of his route. Id. at ¶¶ 104-06.

In late May of 2014, Sprayberry was informed that he would need to report for testing and re-certification of his bus license. Id. at ¶ 109. When he reported, David Tadlock ("Tadlock"), who was the new Transportation Director for the District, informed Sprayberry that he did not need to be re-certified because he was not going to drive a school bus for the District the following school year. Id. at ¶ 112. Following Vinson's resignation as

Interim Conservator on June 30, 2014, the Interim position was filled by C.M. Boyles ("Boyles").  On July 14, 2014, Sprayberry received a letter from Boyles indicating that he was not being offered employment with the District during the 2014-2015 school year.  Id. at ¶ 113.

Following his termination, Sprayberry filed a Charge of Discrimination with the EEOC alleging he had been discriminated against on the bases of race, retaliation, disability, as well as under the Rehabilitation Act and the Individuals with Disabilities Education Act.  Upon receipt of his Right to Sue Notice from the EEOC, Sprayberry filed suit against the MDE, the Mississippi State Superintendent and Deputy Superintendent of Education, the Mississippi State Deputy Superintendent over the Commission of School Accreditation, the SPED Director for the District, Vinson, and Boyles.  Relevant to the matters before te Court, Sprayberry has alleged the following claims against Vinson and Boyles: (1) First Amendment retaliation under 42 U.S.C. § 1983, (2) breaches of the Individuals with Disabilities Education Act ("IDEA"), codified at 20 U.S.C. § 1400, *et seq.*, (3) discrimination under Title VII of the Civil Rights Act, codified at 42 U.S.C. § 2000e, *et seq.*, and (4) retaliation under the Mississippi Whistle Blower Act, codified at Mississippi Code Annotated Section 25-9-171.[1]  Vinson and Boyles

---

[1]  As Sprayberry has alleged claims arising under federal law, the Court may exercise federal subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331.

have now moved for the dismissal of Sprayberry's claims under Rules 12(b)(6) and/or 12(c) of the Federal Rules of Civil Procedure.

## II.  Standards

Vinson and Boyles seeks dismissal pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure.  Under Rules 12(b)(6), a cause of action may be dismissed "for failure to state a claim upon which relief may be granted."  When considering a motion brought pursuant to Rule 12(b)(6), courts must "determine whether the plaintiff has stated a legally cognizable claim that is plausible, [and] not ... evaluate the plaintiff's likelihood of success."  Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)).  In so doing, courts must liberally construe the allegations in the complaint in favor of the plaintiff, and accept all pleaded facts as true.  See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004).  Courts, however, "are not bound to accept as true a legal conclusion couched as a factual allegation."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  As regard the sufficiency of the allegations, the United States Court of Appeals for the Fifth Circuit has held:

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to

7

> relief that is plausible on its face." Bell Atl. Corp.
> v. Twombly, 550 U.S. 544, 570 (2007). "Factual
> allegations must be enough to raise a right to relief
> above the speculative level, on the assumption that all
> the allegations in the complaint are true (even if
> doubtful in fact)." Id. at 555.

In re Katrina Canal Breaches Lit., 495 F.3d 191, 205 (5th Cir.

2007).

Under Rule 12(c), any party may move for judgment on the

pleadings after the pleadings are closed and when it would not

delay trial. A motion brought pursuant to Rule 12(c) "is designed

to dispose of cases where the material facts are not in dispute and

a judgment on the merits can be rendered by looking to the

substance of the pleadings and any judicially noticed facts."

Hebert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76

(5th Cir. 1990) (citations omitted). When considering a Rule 12(c)

motion for judgment on the pleadings, courts apply the same

standard that is used when considering motion to dismiss under Rule

12(b)(6) for failure to state a claim upon which relief can be

granted. See e.g. Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th

Cir. 2008) (citation omitted); Great Plains Trust Co. v. Morgan

Stanley Dean Witter, 313 F.3d 305, 313 n.8 (5th Cir. 2002)(citation

omitted).


### III.  Discussion

**A.  Federal Law Claims**

1.  **Section 1983 First Amendment Claim**

In his Complaint, Sprayberry alleges that his constitutional rights, as protected by the First Amendment, were violated based on Vinson's and Boyle's having taken adverse employment actions against him after he voiced his concerns regarding the safe transport of special education students in the District and assisted with the investigation thereof.[2]  Sprayberry seeks redress of the alleged constitutional violation under 42 U.S.C. § 1983.

To establish a retaliation claim under the First Amendment, Sprayberry must prove: (1) he "suffered an adverse employment decision", (2) his "speech involved a matter of public concern", (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency", and (4) "the protected speech motivated the defendant's conduct." Juarez v. Aguilar, 666 F.3d 325, 332 (5th Cir. 2011)(quoting Kinney v. Weaver, 367 F.3d 337, 356 (5th Cir. 2004)).  Additionally, a supervisory official, like Vinson and Boyles, cannot be held liable under Section 1983 unless "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." Porter v. Epps, 659 F.3d 440, 446 (5th

---

[2]  Sprayberry also seeks redress under Section 1983 on claims that his Fourteenth Amendment right to equal protection of the law was violated.  This claims is only brought against the MDE.  See Compl., ¶ 141 ("Sprayberry ... has alleged an equal protection claim against the Defendant MDE.").

Cir. 2011)(quoting <u>Gates v. Texas Dep't of Prot. & Reg. Servs.</u>, 537 F.3d 404, 435 (5th Cir. 2008)); <u>Banks v. East Baton Rouge Parish Sch. Bd.</u>, 320 F.3d 570, 579-80 (5th Cir. 2003)("To establish liability against the government employees in their official capacity, [a plaintiff] must additionally show that "the execution of a policy, custom, or practice ... caused the adverse action."); <u>Thompkins v. Belt</u>, 828 F.2d 298, 304 (5th Cir. 1987)(explaining that supervisory officials cannot be liable under Section 1983 unless they "either were personally involved in the constitutional deprivation or there is a sufficient connection between the supervisor's wrongful conduct and the constitutional violation.").

Sprayberry complains of three adverse employment actions that were allegedly taken against him after he voiced his concerns regarding the safe transport of special education students in the District.   The alleged adverse employment actions are (1) the discontinuation of his fueling duties in March of 2014, (2) his transfer from the position as driver of the handicapped school bus in March of 2014, and (3) his termination in July of 2014.   As to the adverse employment decisions, there are no allegations in Sprayberry's Complaint that Vinson had affirmatively participated in any of those employment decisions.[3]   Although Sprayberry alleges that some of the complained of adverse employment actions were

_____

[3]   Vinson was no longer serving as interim conservator at the time Sprayberry was terminated on or about July 14, 2014.

taken "by management under the direction of Vinson" and/or that Vinson had ratified some of those decisions, see Compl. ¶¶ 79, 81, these allegations are insufficient to establish liability under Section 1983 against Vinson.  See e.g. Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002)("Section 1983 does not create supervisory or respondent superior liability."); Hobart v. City of Stafford, 916 F. Supp. 2d 783, 799 (SD. Tex. 2013)(explaining that the subsequent ratification of a subordinate's unconstitutional conduct does not create supervisory liability against an individual in the context of Section 1983 because the ratification "does not cause the constitutional injury.")(emphasis in original).  Additionally, there are no allegations that Vinson had developed, planned or implemented a  policy, custom, and/or usage that resulted in his complained of injuries.  See e.g. Thompkins, 828 F.2d at 304 (explaining that for supervisory liability to arise under Section 1983, the "supervisory officials [must] implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.")(alteration in original)(internal citations omitted). For these reasons, the Court finds Sprayberry's Section 1983 First Amendment claims against Vinson in both his official and individual capacity are not plausible and, therefore, should be dismissed.

As regards Boyles, the pleadings show that he assumed the interim conservator position on June 30, 2014.  There are no

allegations that Boyles had any involvement in either the decision to discontinue Sprayberry's fueling duties, or to transfer him from the position as driver of the handicapped school bus, both of which occurred in March of 2014.  Likewise, there are no allegations that Boyles had developed, planned or implemented a  policy, custom, and/or usage that resulted in these complained of injuries. Accordingly, the Court finds Sprayberry's Section 1983 First Amendment claims against Boyles in both his official and individual capacity with respect to these two employment decisions are not plausible and, therefore, should be dismissed.

The pleadings do, however, show that Boyles was acting as interim conservator at the time of Sprayberry's termination, and that he sent the letter informing Sprayberry that he would not be offered employment in the District for the upcoming school year. The Court finds these allegations are sufficient to state a plausible First Amendment retaliation claim.  The Court will, therefore, deny Boyle's motion seeking dismissal of Sprayberry's Section 1983 First Amendment with respect to termination decision.


**2.  IDEA Claim**

Sprayberry has brought a claim under the IDEA.  This statute, generally, "imposes an affirmative obligation on states to assure disabled children a free appropriate public education."  <u>D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.</u>, 629 F.3d 450, 453

(5th Cir. 2010)(citing 20 U.S.C. § 1412(l)).  Vinson and Boyles have moved for the dismissal of this claims on multiple grounds including (1) Sprayberry lacks standing, (2) Sprayberry failed to exhaust his administrative remedies with respect to his IDEA claim, and (3) a cause of action does not lie against an individual.

To the extent Sprayberry's IDEA claim is being asserted against Vinson and Boyles in their official capacities, the Court finds its is not cognizable because Sprayberry has also alleged this claim against the MDE.  See e.g. Tristan v. Soccorro Indep. Sch. Dist., 902 F. Supp. 2d 870, 875-76 (W.D. Tex. 2012)(explaining that in cases in which a plaintiff sues a government employee in his official capacity and also sues the government entity "[t]he official-capacity claims and the claims against the governmental entity essentially merge", and "the plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.")(quoting Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 485 (5th Cir. 2000) and Kentucky. v. Graham, 473 U.S. 159, 166 (1985)(internal citations omitted)(emphasis in original)).  To the extent Sprayberry's IDEA claim is being asserted against Vinson and Boyles in their individual capacities, the Court finds its is not cognizable because the IDEA does not provide "a cause of action against a school official sued in his individual capacity." Tristan, 902 F. Supp. 2d at 875 (citing D.A. v. Houston Indep. Sch. Dist., 716

F.Supp.2d 603, 611 (S.D. Tex. 2009)("It is well-established that these statutes are meant to prevent discrimination by public agencies, not officials acting in their individual capacities.").

For these reasons, the Court finds Sprayberry's IDEA claim against Vinson and Boyle in both their official and individual capacities is not plausible and, therefore, should be dismissed.

**c. Title VII Claims**

In his Complaint, Sprayberry alleges that he was discriminated against on the bases of race and retaliation. Vinson and Boyles have moved for dismissal of Sprayberry's Title VII claims, to the extent they are asserted against them in their individual capacities, on the grounds that there is no individual liability under Title VII.[4] As to this argument, the United States Court of Appeals for the Fifth Circuit has held that a Title VII claim cannot be maintained against an individual. See e.g. Indest v. Freeman Decorating, Inc., 164 F. 3d 258, 262 (5th Cir. 1999) (explaining that the Fifth Circuit does not interpret Title VII "as imposing individual liability"); Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir. 1994)("[A] Title VII plaintiff cannot recover against a public employee in his individual capacity."). For this reason, the Court finds Sprayberry's Title VII claims against

---

[4] Vinson and Boyles have not moved for dismissal of Sprayberry's Title VII claims to the extent those claims are being alleged against them in their official capacities.

Vinson and Boyle, in their individual capacities, are not plausible and, therefore, should be dismissed.

## B.  State Law Claims

Sprayberry has brought a claim under the Mississippi Whistle Blower Statute, codified at MISS. CODE ANN. § 25-9-171, *et. seq.* Vinson and Boyles have moved for the dismissal of this claim on grounds concluding that it is barred by the Mississippi Tort Claims Act.  After reviewing the Complaint, the Court finds, *sua sponte*, that Sprayberry has failed to show that the Court can exercise subject matter jurisdiction over this claim.

The Mississippi Whistle Blower statute provides, in relevant part:  "No agency shall dismiss or otherwise adversely affect the compensation or employment status of any public employee because the public employee testified or provided information to a state investigative body whether or not the testimony or information is provided under oath." MISS. CODE ANN. § 25-9-173(1).  Under this statute:  "[A] whistleblower [who] has been subject to workplace reprisal or retaliatory action is entitled to the following remedies:

> Any agency which violates the provisions of Section 25-9-173 shall be liable to the public employee for back pay and reinstatement.  In addition, an employee whose employment is suspended or terminated or who is subjected to adverse personnel action in violation of Section 25-9-173 is entitled to sue for injunctive relief, compensatory damages, court costs and reasonable attorney's fees; provided, however, that an employee may

15

not recover an amount that exceeds the limitations provided in Section 11-46-15. Additionally, each member of any agency's governing board or authority may be found individually liable for a civil fine of up to Ten Thousand Dollars ($10,000.00) for each violation of Section 25-9-173. In any instance where the agency in violation of Section 25-9-173 has no governing board or authority, the agency's executive director may be found individually liable for a civil fine not to exceed Ten Thousand Dollars ($10,000.00). If the court determines that any action filed under this section by an employee is frivolous and unwarrantable, the court may award to the employer court costs and reasonable expenses, including attorney's fees, incurred in defense of actions brought by the employee under this section.

MISS. CODE ANN. § 25-9-175. The statute further provides:

Actions to recover civil fines and other remedies provided for under Section 25-9-175 may be instituted in the Circuit Court for the First Judicial District of Hinds County or in the circuit court of the public employee's residence. In such actions, the public employee shall prove by a preponderance of the evidence that, but for his providing information or testimony to a state investigative body prior to occurrence of the dismissal or any adverse action, his dismissal or any adverse action taken against him would not have occurred. Remedies provided for herein shall be supplemental to any other remedies, judicial or administrative, provided for under law. Any administrative remedies provided for state-service employees under Sections 25-9-127 through 25-9-131, Mississippi Code of 1972, or any remedies under a grievance or appeal process of the employing governmental entity relating to suspension or termination of employment or adverse personnel action, shall not be exhausted or diminished as a result of any action taken by the employee under Sections 25-9-175 and this section, and the employee shall be required to exhaust such remedies prior to instituting an action authorized under Sections 25-9-175 and this section.

MISS. CODE ANN. § 25-9-177 (emphasis added).

Here, although Sprayberry has shown that he submitted a whistle blower complaint to Vinson, see Compl., Ex. B., he has not

16

shown that he exhausted the administrative remedies provided under Sections 25-9-127 through 25-9-131, as required by Section 25-9-177 to maintain his whistle blower claim. Accordingly, the Court finds Sprayberry's state law whistle blower claim is subject to dismissal based on his failure to show that he exhausted his administrative remedies. The Court will reconsider this ruling in the event Sprayberry shows that the exhaustion requirements of Mississippi Code Annotated Section 25-9-177 were exhausted or otherwise inapplicable in this case. With the dismissal of Sprayberry's state law whistle blower claim, the Court finds the Motions of Vinson and Boyle to (1) strike Sprayberry's claim for punitive damages and to (2) strike his demand for a jury trial, as to his state law claims are both moot.

## IV.  Conclusion:

For the following reasons:

IT IS THEREFORE ORDERED that the Motion of Mike Vinson and C.M. Boyles to Dismiss Federal Claims [Docket No. 18] is hereby granted in part and denied in part.

The Motion is granted to the extent it seeks dismissal of Plaintiff's (1) claims under the Individuals with Disabilities Education Act; (2) claims under Title VII of the Civil Rights Act that are asserted against these defendants in their individual capacities; (3) First Amendment retaliation claim under 42 U.S.C.

17

§ 1983 against Defendant Mike Vinson in his official and individual capacities; and (4) First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendant C.M. Boyles in his official and individual capacities that is based on alleged retaliatory employment actions that occurred on or before June 30, 2014.

The Motion is denied to the extent it seeks dismissal of Plaintiff's Title VII claims against Mike Vinson and C.M. Boyles in their official capacities, and his First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendant C.M. Boyles in his official and individual capacities that is based on alleged retaliatory employment actions that occurred on or after June 30, 2014.

IT IS FURTHER ORDERED that the Motion of Mike Vinson and C.M. Boyles to Dismiss State Claims [Docket No. 14] is hereby granted for the alternate reason that the Court lacks jurisdiction to hear this claim because there has been no showing that Plaintiff exhausted his administrative remedies as required by Mississippi Code Annotated Section 25-9-177. The Court will reconsider this ruling in the event Plaintiff shows that the exhaustion requirements of Mississippi Code Annotated Section 25-9-177 were satisfied or are otherwise inapplicable in this case.

IT IS FURTHER ORDERED that the Motions of Mike Vinson and C.M. Boyles to Dismiss to Strike Plaintiff's Request for Jury Trial as to his state law claims [Docket No. 16] and to Strike Plaintiff's

18

Demand for Punitive Damages as to his state law claims [Docket No. 17], are both hereby dismissed as moot.

SO ORDERED this the 31st day of March, 2016.


s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE